IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01849-PAB-MJW

STACEY GORDANIER,

    Plaintiff,

v.

MONTEZUMA WATER COMPANY,

    Defendant.
_____

**ORDER**
_____

This employment discrimination case is before the Court on defendant Montezuma Water Company's Motion for Summary Judgment [Docket No. 64]. Plaintiff Stacey Gordanier contends that her supervisor sexually harassed her for years, culminating in an unwanted sexual advance at the office after hours. Plaintiff further claims that she was retaliated against after reporting this advance to the company. Defendant moves for summary judgment on both the harassment and retaliation claims, contending that no reasonable jury could find in plaintiff's favor. However, there is enough evidence, albeit just enough, to permit plaintiff to test these claims at trial. Accordingly, and as explained in detail below, defendant's motion is denied.

**I. BACKGROUND**

During the relevant time period, plaintiff worked as defendant's office manager. Michael Bauer was defendant's chief executive officer. Plaintiff contends that, from 2001 until 2006, Mr. Bauer subjected her and other female employees to inappropriate

touching and sexually-themed emails. It is undisputed that on May 9, 2006, at the office after hours, Mr. Bauer professed his longstanding attraction to plaintiff. This May 9 incident was reported to defendant's board of directors, who met with plaintiff and plaintiff's husband regarding the allegations. During this meeting, plaintiff was instructed to keep the incident confidential. After later discovering that plaintiff had discussed the incident with other members of the staff, the board disciplined plaintiff by reducing her pay. Plaintiff resigned on June 6, 2006.

Following her resignation, plaintiff filed a charge of discrimination with the EEOC. The EEOC eventually issued plaintiff a "right to sue" letter, prompting this lawsuit. Plaintiff asserts claims for sexual harassment and retaliatory discipline under Title VII of the Civil Rights Act of 1964.[1] Defendant moves for summary judgment on all of plaintiff's claims, contending that plaintiff's allegations simply do not make out actionable discrimination. That motion is fully briefed and ripe for decision.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). A disputed fact is "material" if under the

---

[1] Following discovery, plaintiff sought to amend her complaint to add claims for not being allowed to take "comp time" and for constructive discharge. I recently denied this request to amend. [Docket No. 137.]

2

relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Id.*

## III. ANALYSIS

Plaintiff has clearly asserted a claim for retaliation. The specifics of her sexual harassment claim, however, are not so clear. Defendant interprets the claim as one based on a hostile work environment and challenges it as such. Mot. for Summ. J. [Docket No. 64] at 9. In response, plaintiff concedes that she is asserting a hostile work environment claim, but contends that she is also alleging other forms of sex discrimination. Pl.'s Resp. [Docket No. 76] at 13. Because defendant's motion is focused on the hostile work environment claim, that is the claim I consider here.[2]

### A. Hostile Work Environment

#### 1. Prior Allegations of Harassment

Defendant's threshold attack on plaintiff's hostile work environment claim is that many of the supporting allegations are too stale to be considered in the present lawsuit.

---

[2] I express no opinion in this Order as to whether plaintiff has properly alleged other forms of discrimination in her cause of action for "sex discrimination/harassment." Compl. [Docket No. 1] at 4.

Mot. for Summ. J. at 4-9. Title VII requires that employees alleging illegal workplace harassment file a charge with the EEOC before filing suit in federal court. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104-05 (2002). This charge must be filed either 180 or 300 days after the allegedly unlawful employment practice occurred. *Id.* The parties assume, and thus so do I, that the 300-day period applies.[3] Mot. for Summ. J. at 5; Pl.'s Resp. at 11-12.

Plaintiff filed her charge on September 27, 2006. Mot. for Summ. J., Ex. A-1. As a result, claims relating to discrete, discriminatory events occurring more than 300 days before this filing would be time barred. 42 U.S.C. § 2000e-5(e)(1); *see also Morgan*, 536 U.S. at 104-05. Hostile work environment claims, however, are different.

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Morgan*, 536 U.S. at 117. To determine whether allegations of discrimination are timely in the hostile work environment context, a court on summary judgment must "'determine if there is a genuine issue whether the acts [plaintiff] alleges are part of the same hostile work environment.'" *Tademy*, 520 F.3d at 1156 (quoting *Duncan v. Manager, Dep't of*

---

[3] This 300-day period applies where an employee first files a charge of discrimination with a state agency empowered to investigate such a claim. 42 U.S.C. § 2000e-5(e)(1); *see also Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1156 (10th Cir. 2008).

4

*Safety, City & County of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005)). This assessment "'look[s] at the type of these acts, the frequency of the acts, and the perpetrator of the acts.'" *Tademy*, 520 F.3d at 1156 (quoting *Duncan*, 397 F.3d at 1309).

Defendant concedes, as it must, that plaintiff's EEOC charge was filed within 300 days of the May 9 incident. Mot. for Summ. J. at 5. The dispute concerns whether the other allegedly harassing and discriminatory incidents, most of which occurred outside of this 300-day period, may also be considered. Defendant contends that these early incidents are unrelated to the May 9 confrontation. Mot. for Summ. J. at 9. I disagree. Plaintiff's basic theory is that, between 2001 and 2006, Mr. Bauer offered her and other female employees neck rubs, repeatedly showed plaintiff sexually-themed emails, and eventually made an unwanted sexual advance toward her. These acts all consist of inappropriate sexual attention directed toward plaintiff by her supervisor. Moreover, while the frequency of certain events may have waned over the years, they continued to occur throughout the period. And the acts were linked to the same, single perpetrator, Mr. Bauer. Under these circumstances, a rational jury could conclude that these acts are part of the same hostile work environment.

### 2. Evidence of Hostile Work Environment

Defendant also contends that plaintiff's evidence fails to show that the work environment was impermissibly hostile toward women. Mot. for Summ. J. at 9-18. In order to make out a hostile work environment claim, there must be a triable issue as to whether the workplace was "'permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of [plaintiff's]

5

employment and create an abusive working environment.'" *Tademy*, 520 F.3d at 1161 (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)). A hostile work environment claim may be based on either severity or pervasiveness. *Id.* Indeed, those grounds "'are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once . . . , while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.'" *Id.* at 1162 (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)). In making this hostile work environment determination, a court must

> "consider the work atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *Herrera*, 474 F.3d at 680. We may consider the conduct's frequency and severity; "whether it is physically threatening or humiliating, or a mere offensive utterance"; and whether it unreasonably interferes with the plaintiff employee's work performance. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007).

*Id.* As the Tenth Circuit has noted, this inquiry "'is particularly unsuited for summary judgment because it is quintessentially a question of fact.'" *Id.* (quoting *Herrera*, 474 F.3d at 680).

Plaintiff's evidence is just enough to create a triable issue as to whether the conduct was sufficiently pervasive to create an actionably hostile work environment. Plaintiff asserts that, beginning in 2001, Mr. Bauer offered her neck rubs "two or three times per month." Mot. for Summ. J., Ex. A-11. After about a year, these propositions became more frequent and were also made to other female – but not the male – members of the staff. *Id.* Also in 2001, Mr. Bauer began showing plaintiff inappropriate, sexually-themed emails. Mot. for Summ. J., Ex. A-12. These emails

6

included demeaning pictures of naked women, cartoon depictions of animal sex, and jokes referencing sexual topics. *Id.* Mr. Bauer received these emails "daily" for six months, with the frequency decreasing to "about three times per week" from late 2001 through January 2005, "four or so times per month" until the summer of 2005, and then "from time to time" after that. Mot. for Summ. J., Ex. A-12. Mr. Bauer would show these emails directly to plaintiff when she went into his office for work-related questions, which she did "regularly." Mot. for Summ. J., Ex. A-3 at 47:16-20, Ex. A-12. According to plaintiff, as a result of this conduct, she developed stomach problems and anxiety, eventually going on anti-depressant medication. Mot. for Summ. J., Ex. A-10. Viewing this evidence collectively and in plaintiff's favor, a reasonable jury could find that the conduct was pervasive enough – occurring almost daily for five years – and offensive enough – objectively demeaning and harassing toward women – to make out a hostile work environment. *Tademy*, 520 F.3d at 1162 ("[A] relentless pattern of lesser harassment that extends over a long period of time . . . violates the statute."). This "quintessential[ ] question of fact," therefore, cannot be decided on summary judgment. *Tademy*, 520 F.3d at 1162.

### B. Retaliation

Defendant also moves for summary judgment on plaintiff's retaliation claim. Plaintiff contends that the board of directors disciplined her after she reported Mr. Bauer's inappropriate behavior. Title VII prohibits employers from taking adverse action against an employee who reports or opposes an unlawful employment practice. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004). A retaliation claim is

assessed under the familiar *McDonnell Douglas* burden-shifting framework: the employee must make a prima facie showing of retaliation, after which the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action, finally necessitating the plaintiff to demonstrate that the asserted reason is pretextual. *Id.* To survive summary judgment on the pretext issue, plaintiff must demonstrate that defendant's proffered reason "'is unworthy of belief.'" *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)). Plaintiff "can meet this standard by producing evidence of 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Id.* (quoting *Argo v. Blue Cross and Blue Shield of Kan.*, 452 F.3d 1193, 1203 (10th Cir. 2006)).

Defendant does not appear to contest plaintiff's prima facie case, but rather contends that it had a legitimate reason for disciplining her. Specifically, defendant argues that plaintiff revealed the May 9 incident to other staff after agreeing with the board, during the meeting at which she reported Mr. Bauer's conduct, to keep the incident confidential. Mot. for Summ. J. at 19-20. Defendant claims that this disclosure was a violation of the company's ethics policy. *Id.* at 20. Plaintiff seems to accept this as a legitimate, non-discriminatory explanation, but contends that it is at least disputed whether this explanation was pretextual. Pl.'s Resp. at 14.

This is, again, a close issue. However, I find that plaintiff's evidence is just enough that a jury could find pretext. Plaintiff asserts that one of the board members, after instructing plaintiff to keep the incident with Mr. Bauer confidential, "jokingly said oh, come on, guys, we're not going to be able to keep this secret. Small town, rumors fly, . . . ." Pl.'s Resp., Ex. M at 61:13-17. From this, a reasonable jury could find that the board itself did not take the confidentiality agreement seriously and did not think that the board members themselves would maintain confidentiality. A jury could therefore conclude that plaintiff's "violation" of the agreement was not the real reason for her discipline but instead a mere pretext. Moreover, the provision of the ethics policy defendant cites as its basis for imposing discipline states that employees will "[e]ndeavor [t]o . . . [r]espect and protect the privileged information to which we have access in the course of our duties, never using it to stir controversy, to harm others or for private gain." Mot. for Summ. J., Ex. A-9. It is not clear that a policy precluding abuse of privileged information encompasses an employee revealing a supervisor's harassing conduct. Finally, plaintiff claims that she revealed Mr. Bauer's conduct to the other women in the office only after one of them complained about being harassed herself. A reasonable jury could conclude that all of this evidence, taken together, casts doubt on defendant's assertion that plaintiff was disciplined for breaching the confidentiality agreement. There is, therefore, a triable issue as to pretext.

IV. CONCLUSION

Title VII is not a civility code. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). It may be that Mr. Bauer's behavior, while boorish and insensitive, was not so pervasively discriminatory as to have violated federal law. It may also be that the board

of directors disciplined plaintiff for legitimate reasons rather than for reporting harassing conduct. But plaintiff has adduced sufficient evidence that, at least at this stage, preclude summary judgment on her claims. Accordingly, it is

**ORDERED** that defendant Montezuma Water Company's Motion for Summary Judgment [Docket No. 64] is DENIED.

DATED March 30, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge